IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal. No.:. 2:25-cr-01123 |
| | ) | |
| | ) | |
| vs. | ) | 46 U.S.C. § 70036(b)(1) |
| | ) | 18 U.S.C. § 1505 |
| | ) | 18 U.S.C. § 2 |
| | ) | |
| FERNANDO SAN DIEGO SAN JUAN | ) | **INFORMATION** |

THE UNITED STATES ATTORNEY CHARGES:

BACKGROUND

At all times relevant to this Information, unless otherwise indicated:

1.      The Defendant, Fernando San Diego San Juan, was the Chief Engineer of the *M/V* *("Motor Vessel") MSC Michigan VII* from on or about April 24, 2024, until on or about July 16, 2024.

The *M/V MSC Michigan VII*

2.      The *M/V MSC Michigan VII* was a 74,583 gross ton ocean-going container ship registered in Liberia and had an International Maritime Organization number of 9196864. The vessel transported cargo worldwide including to and from Charleston, SC.

3.      Company A, known to the United States Attorney, was a ship management company that operated a fleet of sea-going vessels, including the *M/V MSC Michigan VII*. Company B, known to the United States Attorney, was the registered owner of the *M/V MSC Michigan VII*.

4.     The *M/V MSC Michigan VII* had a crew that included a Master, Chief Officer, Chief Engineer (Defendant), Second Engineer, Third Engineer, Fourth Engineer, Fitter, Electrician, and three Oilers. The Master had overall responsibility for the vessel, the Chief Officer supervised the deck department, and the Chief Engineer supervised the Engineering Department. The subordinate crew members in the Engineering Department reported to the Second Engineer, who reported directly to the Chief Engineer. The crew members were all agents of Companies A or B and acted within the scope of that agency and for the intended benefit, at least in part, of Companies A and B.

5.     Defendant had overall responsibility for the operation of the Engine Department, including the supervision of daily operations, formulation, and implementation of engine room procedures, and verification that all systems were properly functioning. These systems included the Main Engine, start-air compressors, generators, and the governor. The governor controlled the amount of fuel that was supplied to the Main Engine.

6.     The Master was in charge of vessel maneuvering, that is, when the vessel was entering or leaving a port or terminal in the United States. During maneuvering, a Pilot would be brought onboard to advise the Master about how to safely navigate the vessel. When a Pilot came onboard, it was the legal duty of the Master to inform the Pilot of any "peculiarities of the vessel and of any abnormal circumstances on the vessel that may affect its safe navigation." 33 CFR § 164.11. In addition, the Master had the duty to "immediately notify the nearest Coast Guard Sector Office or Group Office" of any hazardous condition on the vessel. 33 CFR § 160.216.

2

The Ports and Waterways Safety Act, 46 U.S.C. § 70001 *et seq.*

7.      The Ports and Waterways Safety Act ("PWSA") empowered the Secretary of Homeland Security ("Secretary") to "take such action as is necessary to (1) prevent damage to, or the destruction of, any bridge or other structure on or in the navigable waters of the United States, or any land structure or shore area immediately adjacent to such waters; and (2) protect the navigable waters and the resources therein from harm resulting from vessel or structure damage, destruction, or loss." 46 U.S.C. § 70011(a). The PWSA further authorized the Secretary to issue regulations governing vessel operations, ports and waterways safety, and conditions of entry into the ports of the United States. 46 U.S.C § 70034.

8.      The PWSA regulations require that whenever there is a hazardous condition either on board a vessel or caused by a vessel or its operations, the owner, agent, master, operator, or person in charge shall immediately notify the nearest Coast Guard Sector Office or Group Office. 33 C.F.R. § 160.216(a). The requirement applies to all foreign vessels that are bound for ports or places within the navigable waterways of the United States. 33 C.F.R. § 160.203. A "hazardous condition" means "any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage." 33 C.F.R. § 160.202.

United States Enforcement of the PWSA

9.      To facilitate enforcement of the PWSA, the Coast Guard is empowered under 14 U.S.C. § 522(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law. Pursuant to that authority, the Coast Guard "may make

3

inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."

## COUNT ONE
### (Failure to Report a Hazardous Condition)

10.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 9 of this Information as if fully set forth herein:

11.     On or about June 5, 2024, in the port of Charleston, South Carolina, in the District of South Carolina, Defendant, **FERNANDO SAN DIEGO SAN JUAN**, knowingly and willfully failed, and caused the failure to immediately report a hazardous condition on the *M/V MSC Michigan VII* to the nearest U.S. Coast Guard Sector. Specifically, **FERNANDO SAN DIEGO SAN JUAN** failed to immediately report, and caused the failure, to immediately report that the vessel's main engine governor linkage had to be and was being manually manipulated in order for the Main Engine to achieve the ordered revolutions per minute that were signaled from the bridge telegraph during maneuvering.

In violation of Title 46, United States Code, Section 70036(b)(1), Title 33, Code of Federal Regulations, Sections 160.202, 160.203, and 160.216(a), and Title 18, United States Code, Section 2(b).

## COUNT TWO
### (Obstruction of Agency Proceeding)

12.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 9 of this Information as if fully set forth herein:

13.     On or about June 8, 2024, in the port of Charleston, South Carolina, in the District

4

of South Carolina, Defendant, **FERNANDO SAN DIEGO SAN JUAN**, during an official proceeding of the National Transportation Safety Board and the United States Coast Guard, corruptly endeavored to influence, obstruct or impede the due and proper administration of the law; to wit: **FERNANDO SAN DIEGO SAN JUAN** falsely stated to the National Transportation Safety Board and the United States Coast Guard that: (1) the problem with the Main Engine not achieving the revolutions per minute ordered by the bridge telegraph had never happened before; (2) that the governor linkage had not been "touched" or "twisted" by anyone other than a technician; and (3) that he did not know if the governor linkage was being manipulated and twisted by others.

In violation of Title 18, United States Code, Section 1505.


BRYAN P. STIRLING
UNITED STATES ATTORNEY

BY: _____
Dean H. Secor
W. Cole Shannon
Assistant United States Attorneys
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
Telephone: (843) 727-4381

5